**PETTI et al., Appellants,**

v.

**PERNA et al., Appellees.**

[Cite as *Petti v. Perna* (1993), 86 Ohio App.3d 508.]

Court of Appeals of Ohio,
Hancock County.

No. 5–92–21.

Decided Feb. 24, 1993.

*Connors & Dzienny Co., L.P.A., Michael A. Dzienny* and *Darrell V. Van Horn,* for appellants.

*Hanna & Hanna* and *Drew A. Hanna,* for appellees.

SHAW, Judge.

Plaintiff-appellant, Emil J. Petti, appeals the judgment entered against him in the Hancock County Court of Common Pleas following a jury trial in the personal injury action brought by plaintiff against defendant-appellee, John Perna.

On May 2, 1989, in Marion Township, Hancock County, at approximately 9:10 p.m., plaintiff was driving east on State Route 568 and preparing to turn left across a single oncoming lane in order to turn north onto County Road 95. At

the same time, defendant was proceeding west on State Route 568, approaching the same intersection from the opposite direction. Defendant's car had only one working headlight. As plaintiff's car began to turn left across the westbound lane, defendant's car reached the intersection and collided with the right front portion of plaintiff's vehicle.

Deputy Anthony Miller of the Hancock County Sheriff's Department responded to the scene of the accident, arriving approximately eight minutes after the collision. Deputy Miller observed the scene and obtained the parties' drivers' licenses. Statements were taken from defendant and from a passing motorist who witnessed the accident. No statement was taken from plaintiff.

Deputy Miller later completed an accident report. On page two of the report, under the section "Describe What Happened," Deputy Miller wrote "Unit # 1 [defendant] was westbound on S.R. 568, Unit # 2 [plaintiff] was eastbound on S.R. 568 making a left turn onto C.R. 95. Unit # 2 failed to yield the right of way to Unit # 1 and Unit # 1 struck Unit # 2 in the right front with the front of Unit # 1." Also on page two of the report, under "Contributing Factors," Deputy Miller marked "1" ("none") as to defendant and marked "2" ("failure to yield") as to plaintiff.

Subsequently, on January 18, 1990, plaintiff filed suit against defendant, seeking damages for injuries sustained as a result of the accident. A jury trial commenced on April 28, 1992. On May 1, 1992, the jury returned a verdict in favor of defendant. The trial court entered judgment for defendant, in accordance with the verdict, on June 30, 1992.

Plaintiff thereafter brought the instant appeal, asserting the following three assignments of error:

"I. The trial court erred in permitting the reading to the jury of inadmissible portions of the police report during the cross-examination of plaintiffs' expert witness Dr. Bernard Abrams.

"II. The trial court erred in permitting Deputy A.P. Miller to read to the jury the 'contributing factors' noted on his accident report.

"III. The trial court erred in admitting the accident report into evidence."

At issue in plaintiff's first assignment of error is the reading of portions of the police report by plaintiff's expert witness during cross-examination. Dr. Bernard Abrams, an optometrist, was called by plaintiff as an expert witness to testify on the issue of visual perception. On cross-examination, defendant questioned Dr. Abrams about the contents of the police report as follows:

"Q. [By Mr. Hanna, defense counsel] And you looked at his accident report in preparing yourself to testify to this jury, did you not, sir?

"A. [By Dr. Abrams] Yes, sir.

"Q. And if you need to get it out, please do so. If you want, I've got an extra copy, it will save some time here. Okay. I'd ask you to turn to Page 2, please.

"A. Yes, sir.

"Q. And on Page 2, bottom middle section, right-hand side, is the standard portion of the Ohio accident report dealing with factors causing the accident; is that correct, Doctor?

"A. Yes, sir.

"Q. And Deputy Miller reports as factors causing the accident, as to this young man here John Perna, what?

"Mr. Dzienny: [counsel for plaintiff] Objection, Your Honor.

"Q. What does he report?

"A. A statement is driver error, none.

"Q. So he found no error on the part of John Perna, did he?

"A. Yes, sir.

"Q. Now, let's go to Mr. Petti, what error did he find as to Mr. Petti?

"Mr. Dzienny: Objection, your Honor, based on the *Ozinski* case.

"The Court: Overruled.

"A. List statement is failure to yield."

At issue in plaintiff's second assignment of error is the testimony of Deputy Miller. During defendant's direct examination of Deputy Miller, the officer testified as to his conclusions concerning the cause of the accident, as follows:

"Q. [By Mr. Hanna, defense counsel] In your investigation of this accident, Mr. Miller, what did you determine were the contributing factors to this accident?

"A. [By Deputy Miller] Unit two which is driven by Mr. Petti, failed to yield the right of way from a left turn.

"Q. And did you so mark Defendants' Exhibit J, the accident report, that way?

"A. Yes, I did.

"Q. And did you also mark a decision as to whether there were any contributing factors as to driver number 1, Mr. Perna?

"A. I marked none."

At issue in plaintiff's third assignment of error is the admission into evidence of the accident report itself. While portions of the report were redacted, the part of

the report containing Deputy Miller's conclusions about the cause of the accident was received into evidence.

Thus, at issue in all three assignments of error is the determination or opinion of Deputy Miller, as stated in the police report and as testified to by Deputy Miller himself, that plaintiff's failure to yield was the sole factor contributing to, or causing, the accident. We believe it is important that while the form of the evidence differed, the substance was identical.

At the time of the accident, as noted above, defendant was operating his vehicle with only one working headlight. Because of this, the parties agree, defendant forfeited his right of way and the issue of fault arose. At trial, plaintiff argued that defendant was negligent in driving with only one headlight and that this negligence caused the accident. Defendant argued that plaintiff was negligent in failing to see defendant and in turning in front of defendant's oncoming vehicle and that this negligence caused the accident.

Hence, the central issue before the jury was who was negligent, or more negligent, and, in particular, who proximately caused the accident. Deputy Miller's opinion as to the cause of the accident therefore directly addressed the ultimate issue to be decided by the jury. Accordingly, we shall first analyze the admissibility of Deputy Miller's direct opinion testimony, and then proceed to the issue of that evidence's admissibility in the other forms in which it was received.

Evid.R. 704 provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

The Staff Note to Evid.R. 704 provides, in relevant part:

" * * * The rule must be read in conjunction with Rule 701 and Rule 702, each of which requires that opinion testimony be helpful to, or assist, the trier of the fact in the determination of a factual issue. Opinion testimony on an ultimate issue is admissible if it assists the trier of fact, otherwise it is not admissible. * * * "

Evid.R. 701 governs opinion testimony by lay witnesses and provides as follows:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Evid.R. 702 governs expert testimony and provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

■ Therefore, if Deputy Miller testified as a lay witness concerning his conclusion or opinion about the cause of the accident, the two-part test of Evid.R. 701 must be met. We note that Deputy Miller was not present at the accident and did not witness it. He had no personal firsthand knowledge of the accident. As his conclusion was formed on the basis of information provided by other persons, based on the perceptions of those persons, we are unable to find that his opinion as to the accident's cause was rationally based on his own perception. See *Hatfield v. Andermatt* (1988), 54 Ohio App.3d 188, 561 N.E.2d 1023 (holding that trial court erred in admitting the nonexpert opinion testimony of a police officer, who did not witness the accident in question, as to the proximate cause of the accident and the negligence of the parties involved). Accordingly, we hold that Deputy Miller's testimony concerning his opinion as to which driver caused the accident was inadmissible lay witness opinion testimony pursuant to Evid.R. 701.

■ In order for Deputy Miller to testify as an expert witness concerning his conclusion or opinion about the cause of the accident, the requirements of Evid.R. 702 must be met. There is no indication in the record that Deputy Miller had some scientific, technical or other specialized knowledge which would assist the jury in understanding the evidence. Therefore, Deputy Miller was not qualified to render an expert opinion as to which party caused the accident. We therefore find that the evidence was also inadmissible under Evid.R. 702.

■ Having determined that Deputy Miller was unable to personally testify as to his opinion about the cause of the accident, we find little merit in defendant's argument that the same opinion evidence was admissible in other forms. Without Deputy Miller's testimony, the police report is hearsay and is not admissible unless it meets one of the exceptions enumerated in the Rules of Evidence. Evid.R. 801 *et seq.* A police report constitutes a "public record" for evidentiary purposes. Evid.R. 803(8). Portions of a police report which contain "matters observed pursuant to a duty imposed by law as to which matters there was a duty to report" are admissible in evidence. *Id.* See, also, *Sanders v. Hairston* (1988), 51 Ohio App.3d 63, 554 N.E.2d 951. The observations must be either the firsthand observations of the official making the report or those of one with a duty to report to a public official. *Cincinnati Ins. Co. v. Volkswagen of Am., Inc.* (1987), 41 Ohio App.3d 239, 535 N.E.2d 702.

■ In the case before us, the declarations of Deputy Miller contained in the report on the issue of causation did not stem from firsthand observation of the matters reported. Accordingly, we find that the portion of the police report containing the officer's conclusions about the cause of the accident, or contributing factors, was not admissible as part of Dr. Abrams's testimony on cross-examination or as part of an exhibit.

■ Having concluded that the evidence at issue was inadmissible, we must now decide whether plaintiff was prejudiced by the erroneous admission of that evidence. Error in the admission of evidence is not ground for reversal unless substantial rights of the complaining party were affected or it appears that substantial justice was not done. Civ.R. 61; *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. See, also, Evid.R. 103. In determining whether a substantial right of a party has been affected, the reviewing court must decide whether the trier of fact would have reached the same decision had the error not occurred. See *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690.

■ In the case *sub judice,* a complete review of the record reveals that had the incompetent evidence been excluded, there was still sufficient competent evidence upon which the jury could have based its verdict in favor of defendant. Specifically, an eyewitness, Linda McDaniel, testified that she had been driving just behind plaintiff immediately prior to the accident. McDaniel testified that she noticed defendant's car approaching the intersection at some distance, despite defendant's having only one headlight. She testified that defendant's oncoming car was visible and that plaintiff turned directly into the path of defendant's car.

The record reflects other factors demonstrating that substantial justice was achieved in this case, in spite of the erroneous admission of Deputy Miller's opinion on the cause of the accident. For example, upon plaintiff's cross-examination of Deputy Miller, the fact that defendant was driving with only one headlight was emphasized and Deputy Miller conceded that operating a vehicle with only one functional headlight could be a possible factor contributing to a nighttime collision. Additionally, it was made clear to the jury that the officer's opinion as to contributing factors was based solely upon secondhand information and not on personal experience.

Furthermore, as part of the general charge to the jury, the trial judge gave the following detailed instructions:

"The Court: Ohio Revised Code, Section 4513.03 entitled Lighted Lights Required states in pertinent part as follows: Every vehicle upon a street or highway within this state during the time from one hour [*sic*] after sunset to one-half hour before sunset [*sic*] and at any other time when there are unfavorable

atmospheric conditions or when there is not sufficient natural light to render discernible persons, vehicles and substantial objects on the highway at a distance of 1,000 feet, shall display lighted lights and illuminating devises as required by Sections 4513.04 to 4513.37 of the Revised Code.

"Mr. Dzienny: [counsel for plaintiff] Your Honor, may I interject for a moment. You mentioned one hour after sunset in reading the charge.

"The Court: During the time from one-half hour after sunset to one-half hour before sunrise. If I misspoke it's a half hour, okay. Thank you, Mr. Dzienny.

" * * *

"Ohio Revised Code, Section 4513.04 entitled Headlights states as follows: Every motor vehicle other than a motorcycle, and every trackless trolley shall be equipped with at least two headlights with at least one near each side of the front of the motor vehicle or trackless trolley. A driver of a vehicle upon a street or highway within this state during the time from one-half hour after sunset to one-half hour before sunrise and in any other time when there are unfavorable atmospheric conditions or when there is not sufficient natural light to render discernible persons, vehicles and substantial objects on the highway at a distance of 1,000 feet ahead, shall display lighted lights and illuminating devices. In addition, every motor vehicle shall be equipped with at least two headlights with at least one near each side of the front of the motor vehicle.

" * * *

"*Now, one who violates any of these statutes which imposes a mandatory, specific duty is guilty of negligence as a matter of law, whether ordinary care was used or not used.*

"The Plaintiffs' claim the Defendant operated a motor vehicle on the evening of May 2nd, 1989, prior to the accident with only one operational headlight. The law provides every motor vehicle shall be equipped with at least two headlights with at least one near each side of the front of the motor vehicle during the time once again from one-half hour after sunset to one-half hour before sunrise and at any other times when there are unfavorable atmospheric conditions or when there is not sufficient natural light to render discernible persons, vehicles and substantial objects on the highway at a distance of 1,000 feet ahead, shall display lighted lights and illuminating devices as required pursuant to the code.

"*This is a mandatory duty and its violation is negligence. If the Defendant violated it he was negligent. If he did not violate this law, or laws, then he was not negligent in this respect.*

" * * *

"Right of way means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it or he is moving in preference to another vehicle approaching from a different direction into its path.

" * * *

"To keep his right of way, a preferred party to continue to travel uninterruptedly, the driver must operate in a lawful manner. If he does not do so he loses the right of way and his status as the preferred party.

" * * *

"[I]f a preferred party loses the right of way by not proceeding in a lawful manner, each party then must use ordinary care under the circumstances.

" * * *

*"If you find that the Defendant John M. Perna was not traveling in a lawful manner, then he lost the right of way and was not entitled to any preference over the Plaintiff Emil J. Petti."* (Emphasis added.)

Finally, the jury interrogatories in this case reveal that the jury found plaintiff to be sixty-percent responsible for causing the accident, a determination which is altogether consistent with the rest of the evidence presented.

For all of these reasons, we find that the jury would have reached the same decision had the evidentiary error not occurred. Thus, admission of the incompetent evidence does not amount to reversible error. Accordingly, plaintiff's three assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

EVANS, P.J., and HADLEY, J., concur.