Defendant-appellant, Theodore H. Hankins, appeals a decision of the Madison County Municipal Court granting judgment in favor of plaintiff-appellee, Max Brewer, dba Brewer Plumbing Heating, Inc.
Appellant is a home builder, and appellee owns a plumbing and heating installation company. In 1991, the parties orally agreed to have appellee work on one of appellant's houses. The house was originally referred to as "Spec Home #2." On December 9, 1991, appellee sent a bill to appellant for the installation of plumbing in the amount of $2,419.95. Appellant paid appellee by check on January 2, 1992. Thereafter, appellee was asked by appellant to install a heating furnace in Spec Home #2 to allow appellant to continue interior work. This was evidenced by plaintiff's exhibit No. 5, a job invoice which lists the number of hours spent by appellee's employees in installing the furnace. Of importance to the case, the exhibit refers to "Hankins Spec. #2" and gives 314 Thames Court as the address.
Appellee testified that because appellant could not pay him right away for the furnace installation, the parties agreed that appellant would pay appellee the balance owed when appellant sold the house. Upon selling the house, appellant failed to pay appellee for the furnace installation. After learning from the purchaser that the house had been sold, appellee sent a bill to appellant on February 18, 1993 for the furnace installation in the amount of $3,244.80. The bill references 314 Thames Court.
Testimony at trial revealed that 314 Thames Court was in fact a vacant lot without any structure on it, which appellant does not own, and for which no building permits have been issued or applied for. Testimony at trial also revealed that appellant owned two houses on Thames Court, "both of them side by side," and "each of which were spec homes[.]" One of the properties is known as the Thelma Alder House (the "Alder House"). Appellant testified that the address of the house right next to the Alder House "would probably be 310 [Thames Court]."
Appellee testified that Spec Home #2 refers to the house right next to the Alder House and that the February 18, 1993 bill referencing 314 Thames Court referred to the house next to the Alder House. Appellee also testified that he referenced 314 Thames Court, instead of Spec Home #2, because that was the address appellant eventually gave him for billing purposes. Appellant denied referencing the house next to the Alder House as 314 Thames Court. Appellant acknowledged that appellee had done some heating work in the house right next to the Alder House and that he (appellant) had eventually sold the house. Appellant also acknowledged he never paid appellee for the heating work because he was never billed for it. The record shows that the bills sent by appellee to appellant for amounts due mistakenly referenced 314 Thames Court instead of Spec Home #2. Appellant testified that while he did not know why he received bills for 314 Thames Court, a lot he did not own, he never asked appellee for an explanation. Nor did he ask appellee why he was never billed for the heating work done on Spec Home #2.
On April 4, 1996, appellee filed a complaint seeking a judgment against appellant in the amount of $3,144 for work done on one of appellant's houses. The complaint listed the house as Spec Home #2 in an attached invoice. In his answer, appellant stated in his defense that the identification of the house was unclear. On June 4, 1996, appellee made a motion to amend his complaint which the trial court granted. The amended complaint specifically listed the house as 314 Thames, attached the February 18, 1993 invoice to the complaint, and changed the prayer from $3,144 to $3,244.80. In his answer to the amended complaint, appellant denied all claims, including owing any monies as a result of any construction on 314 Thames Court.
On July 5, 1996, appellant filed a request for production of documents. Appellee did not respond to the motion by way of either a motion or production of the requested documents. On May 23, 1997, appellant filed a motion for sanctions against appellee for failure to provide discovery. By entry filed July 17, 1997, the trial court ordered appellee "to respond to [appellant's] motion for discovery no later than July 25, 1997 * * * or suffer sanctions." The record shows that the requested discovery was served on July 24, 1997. The case was tried to the bench on July 31, 1997. By entry filed December 18, 1997, the trial court granted judgment in favor of appellee and ordered appellant to pay appellee $3,244.80. Appellant timely appealed and raises two assignments of error.
Appellant's first assignment of error reads as follows:
 THE COURT ERRED BY ABUSING ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT DID NOT TIMELY CONSIDER, SET A HEARING DATE OR RESPOND TO DEFENDANTS [SIC] MOTION TO COMPELL [SIC] DISCOVERY UNTIL TWELVE DAYS BEFORE TRIAL, AND ORDERING DISCOVERY SEVEN DAYS BEFORE TRIAL.
Under this assignment of error, appellant specifically contends that the trial court abused its discretion (1) by ignoring appellant's motion for sanctions for several months and/or by not compelling discovery sooner, and (2) by failing to journalize two previous discovery orders made from the bench. Appellant alleges that the trial court held two pre-trial conferences in January and April 1997 during which it orally ordered appellee to comply with appellant's discovery request.
Appellant filed his motion for sanctions specifically pursuant to Civ.R. 37(B)(2)(c) which states in relevant part that "[i]f any party * * * fails to obey an order to provide or permit discovery, * * * the court * * * may make such orders in regard to the failure as are just, [such as] striking out pleadings * * *, dismissing the action * * *, or rendering a judgment by default against the disobedient party[.]"
The foregoing language clearly shows that a sanction for failure to provide discovery under Civ.R. 37(B)(2) may be imposed only for the failure to obey a court order to provide or permit discovery. Mr. D. Realty Co. v. Ahern (Jan. 30, 1987), Hamilton App. No. 84CV-09582, unreported, at 4. Furthermore, before a party may be subject to a sanction under Civ.R. 37(B)(2), such person "must be in default of an `order' properly announced and formally entered." Sexton v. Sugar Creek Packing Co. (1973),38 Ohio App.2d 32, 35. That is because "[a] court of record speaks only through its journal and not by oral pronouncements or mere written minute or memorandum." Schenley v. Kauth (1953), 160 Ohio St. 109, paragraph one of the syllabus.
If, as alleged by appellant, the trial court twice orally ordered appellee from the bench to comply with appellant's discovery request, there is absolutely no evidence in the record that such orders were either journalized by the trial court or incorporated in its July 17, 1997 entry ordering appellee to respond to appellant's motion for discovery. While appellant vehemently argues that such failure to journalize its oral orders was an abuse of discretion on the part of the trial court, appellant has not cited any case law, and we have found none, in support of his argument and we therefore find it to be meritless. "A failure to cite case law or statutes in support of an argument as required by App.R. 16(A)(7) is grounds to disregard an assignment of error pursuant to App.R. 12(A)(2)." Meerhoff v. Huntington Mtge. Co. (1995), 103 Ohio App.3d 164, 169.
However, even assuming, arguendo, that the trial court erred in not journalizing its oral orders, appellant could have moved the court to issue a nunc pro tunc entry journalizing its oral discovery orders, but failed to do so. It is well-established that the "function of a nunc pro tunc journal entry is to correct an omission in a prior journal entry so as to enter upon the record judicial action actually taken but erroneously omitted from the record." Roth v. Roth (1989), 65 Ohio App.3d 768, 771. In light of the foregoing, we find that the trial court neither erred nor abused its discretion in failing to journalize its alleged oral discovery orders.
Appellant also argues that it was an abuse of discretion for the trial court to rule so tardily on his motion for sanctions and for not compelling discovery sooner than seven days before trial.
It is well-established that a trial court's rulings governing discovery are within the sound discretion of the trial court. Woodstream Dev. Co. v. Payak (1994), 93 Ohio App.3d 25, 27. An abuse of discretion is more than an error of law or a mistake, it implies the court's attitude was unreasonable, arbitrary or unconscionable. Id. "Decisions regarding discovery timing will not be overturned by a reviewing court absent an abuse of discretion." Williams v. Southern Ohio Corr. Facility (1990),67 Ohio App.3d 517, 523.
In the case at bar, appellant fails to show how he was prejudiced by the trial court's "late" ruling on his motion for sanctions. A bare allegation of prejudice is insufficient to demonstrate that the trial court's decision was unreasonable, arbitrary or unconscionable. Furthermore, after the trial court's ruling, appellant could have requested that the trial be continued to allow him additional time. However, the record is devoid of any evidence that appellant requested a continuance or that he was dissatisfied with the trial court's handling of the matter. As a result, we find that the trial court did not abuse its discretion by ruling on appellant's motion for sanctions when it did and for not compelling discovery sooner. Appellant's first assignment of error is overruled.
Appellant's second assignment of error reads as follows:
 THE COURT ERRED WHEN IT PERMITTED TESTIMONY TO BE GIVEN ON OTHER PROPERTY AT OTHER LOCATIONS WITHOUT THE COMPLAINT BEING AMENDED OR WITHOUT CONSENT OF DEFENDANT.
The record shows that during trial, over the continuing objection of appellant's counsel, testimony was elicited from both parties as to what type of work had been done in the Alder House, the house next to the Alder House, and Spec Home #2. Appellant argues that testimony at trial should have been strictly limited to the only house referenced in appellee's amended complaint and pretrial brief, 314 Thames Court, and that it was error to allow testimony regarding any other properties. In light of the record before us, we find appellant's argument to be disingenuous.
Appellee's amended complaint clearly states in relevant part:
 In 1991, among other times, the Defendant hired Plaintiff to perform various plumbing and installations on the residence located at 314 Thames Court.
* * *
 On February 18, 1993, an account was stated between the Plaintiff and Defendant, and a balance of $3,244.80, due from the Defendant to Plaintiff was stated on the account. * * *
* * *
 In December of 1991, Defendant and Plaintiff agreed that the amount stated on the account was the correct balance due to Plaintiff from Defendant, and that Defendant agreed to pay Plaintiff said amount when the property at 314 Thames Court was sold.
In response to the amended complaint, appellant merely "denie[d] owing Plaintiff any such sum of money either individually or as a result of any construction on 314 Thames Court." It was not until July 28, 1997, two days before the trial, that appellant finally acknowledged that he "ha[d] never owned 314 Thames Court[.]" We can safely assume that appellant knew he did not own Thames Court from the very inception of the proceedings before the trial court. Yet, appellant chose not to mention this fact until two days before trial. Appellant now claims that appellee's mistake in suing appellant for the wrong property entitles him to relief.
It is well-established that mistake is an affirmative defense which a defendant must plead with specificity. Manson v. Gurney (1989), 62 Ohio App.3d 290, 293. Once appellee's amended complaint was filed and properly served on appellant, appellant had a duty to speak and bring to the attention of the court that he did not own 314 Thames Court. Civ.R. 9(B) requires a party to particularly state the circumstances giving rise to a claim of mistake. Alternatively, appellant could have filed a motion to dismiss appellee's amended complaint pursuant to Civ.R. 12(B)(6).
Instead, appellant chose to keep quiet until two days before trial. Appellant apparently believed that if he kept quiet, he would prevail at trial. At trial, appellant unsuccessfully objected to any testimony regarding any property other than 314 Thames Court. Appellant now argues that allowing such testimony was in violation of Civ.R. 15(B), which provides as follows:
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
We agree with appellant that the issues as to Spec Home #2 or the house next to the Alder House were not tried by express or implied consent of the parties. Nor can we find that the trial court allowed the pleadings to be amended during trial pursuant to Civ.R. 15(B). Thus, it was error for the trial court to allow the parties to testify with regard to properties other than 314 Thames Court inasmuch as the pleadings were not amended during or after trial pursuant to Civ.R. 15(B).
However, we find that such error was harmless error. "Error in the admission of evidence is not ground for reversal unless substantial rights of the complaining party were affected or it appears that substantial justice was not done." Petti v. Perna (1993), 86 Ohio App.3d 508, 514; Civ.R. 61. Stated another way, an appellate court will not reverse unless the error complained of was really harmful to the complaining party. See Citizens Natl. Bank v. Barge-In, Inc. (Sept. 28, 1984), Brown App. No. CA83-07-008, unreported.
A thorough review of the record clearly shows that Spec Home #2 and the house next to the Alder House referred to the same house and that such house was mistakenly referred to by appellee as 314 Thames Court. At trial, appellant acknowledged that he owed appellee money for some heating work done in the foregoing house but that he never paid appellee for the heating work even after he sold the house because he was never billed for it. Incredibly, appellant testified he never asked appellee why he was never billed for the heating work done in the house. Also incredibly, appellant testified that while he received bills from appellee for 314 Thames Court, a lot he knew he did not own, appellant never asked appellee about these bills.
In light of the foregoing and in light of the fact that appellant chose not to avail himself of Civ.R. 9(B) and 12(B)(6) and not to bring to the attention of the trial court and appellee that he did not own 314 Thames Court until two days before trial, we find that the trial court's error in allowing testimony on properties other than 314 Thames Court was harmless. Appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.