In re WASHINGTON.

[Cite as *In re Washington* (2001), 143 Ohio App.3d 576.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 77872 and 77888.

Decided May 21, 2001.

*Susan J. Moran* and *Matthew G. Harris,* for appellant.

*Kathleen W. Wood,* Cuyahoga County Assistant Public Defender, for Melissa Gamble.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Cara L. Santosuosso,* Assistant Prosecuting Attorney, for appellee.

*Stephen DeJohn,* guardian *ad litem.*

PATRICIA ANN BLACKMON, Judge.

Melissa Gamble appeals from a judgment of the juvenile court granting permanent custody of her daughter, Felicia Washington, to Cuyahoga County Department of Children and Family Services ("CCDCFS"). Kenneth Washington, the father, separately appeals from the same judgment. Gamble assigns the following as error for our review:

"The trial court erred in granting CCDCFS's motion for permanent custody of Felicia Washington as said findings were against the manifest weight of the evidence."

Washington also assigns one error for our review. It states:

"The juvenile court committed prejudicial error by admitting into evidence a hearsay psychological evaluation."

Having reviewed the record and the legal arguments of the parties, we affirm in part the judgment as to Gamble's assigned error and reverse in part as to Washington's assigned error.

The record before us reveals that Gamble gave birth to Felicia on November 13, 1997. In March 1998, Felicia had been diagnosed with non-organic failure to thrive due to neglect and improper nutrition. Consequently, CCDCFS filed a complaint for emergency temporary custody, which the court granted, placing Felicia in the care of CCDCFS.

Subsequent to the removal, CCDCFS developed a case plan for Gamble and Washington in an effort to return Felicia to the home. This case plan required the parents to complete parenting education classes, nutrition education, attend Felicia's medical appointments, establish paternity and undergo a psychological evaluation.

The parents began participating in a sixteen-week parenting education program; however, it took them seven months to complete it due to their failure to attend all of the scheduled classes. After eventually completing the course, Jeanette McLean, the county social worker, referred them to the same program because the facilitator determined that they did not successfully complete the program. The parents did not demonstrate that they had learned or integrated any of the parenting skills being taught through the program. Gamble and Washington began the course again in August 1999. As of March 9, 2000, they had not yet completed it.

Another component of the case plan required Gamble and Washington to attend all of Felicia's medical appointments to learn about her failure to thrive condition and how to treat it. The record reflects that several of these appointments had been missed and, when the parents did attend, Washington remained in the waiting room and Gamble did not actively participate in the appointments.

In an effort to improve their parenting skills, the parents contacted Janet Lyde, a counselor at Bellefaire; however, they did not do so until a permanent custody motion had been filed by CCDCFS.

In June 1999, CCDCFS requested, and the court granted, an extension of its temporary custody due to the parents' failure to comply with the case plan. Thereafter, in August 1999, CCDCFS modified their request seeking temporary custody to one seeking permanent custody.

The court conducted a hearing on March 9, 2000. At the outset, counsel for CCDCFS requested that the court admit into evidence a psychological report ordered by the court and prepared by the court clinic. Gamble's counsel objected, arguing that it was hearsay; Washington's counsel, however, did not object. Instead, he noted that it had been ordered by the court. The court, after giving both defense counsels an opportunity to subpoena the doctor who authored the report, admitted the report into evidence.

CCDCFS introduced the testimony of its social worker, Jeanette McLean, and foster care assessor Amy Wallace. For his case in chief, Washington called family therapist Janet Lyde and testified on his own behalf. Gamble also testified and called Felicia's paternal grandmother, Margaret Washington.

The court, after hearing all of the evidence, granted permanent custody of Felicia to CCDCFS, finding the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home, demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child, and committed abuse against the child or caused the child to suffer neglect.

In this appeal, Gamble asserts that the trial court's grant of permanent custody to CCDCFS is against the manifest weight of the evidence.

■ When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in a criminal context. *In re Ozmun* (Apr. 14, 1999), Summit App. No. 18983, unreported, 1999 WL 225847.

In *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, the court stated:

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

Additionally, the court in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, stated:

"Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them."

■■■ Therefore, our role is to determine whether there was relevant, competent, and credible evidence upon which the fact finder could base its judgment. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

■■■ In this case, CCDCFS called the social worker, Jeannette McLean, who testified that the original reason for Felicia's removal from her home had been a diagnosis of non-organic failure to thrive, that she has been out of the home since the day of removal almost two years ago, and that the parents have repeatedly failed to comply with the requirements of the case plan by missing appointments and by failing to incorporate the lessons of the parenting classes in the care for Felicia.

Next, Amy Wallace, a foster care assessor at Marycrest, testified Marycrest has provided a foster home for Felicia since the time of her removal at eight months old, she had been placed in a specialized home because of her health, and, in her opinion, the parents did not appear to be learning from the parenting classes. She additionally testified that during the medical appointments Washington stayed in the waiting room and both parents missed several appointments. Wallace stated that neither parent has accepted responsibility for Felicia's condition and that she is not bonded to her biological parents; rather, she is very attached to her foster parents, whom she has been with since July 1998. CCDCFS then rested.

On behalf of Washington, Janet Lyde, a family therapist with Bellefaire Jewish Children's Bureau, testified that she first met the parents in November 1999 and has spent approximately sixty-three hours with them. She stated that she

observed them with their four-and-one-half-year-old son and found them to be nurturing towards him. Lyde also testified that the parents did not seek her help until three months prior to the permanent custody hearing and, at that point, Felicia had been out of their home for approximately two years.

Next, Kenneth Washington testified and acknowledged that he had missed several of the parenting classes and that he had difficulty in learning from them because he does not read well. On cross-examination, he admitted at one time that he and Gamble had discussed making Felicia available for adoption. He then stated that he now wants her back in the home. He then rested.

Melissa Gamble testified that she initially took Felicia to the emergency room because she cried and screamed for no apparent reason and had been told that the baby had colic. In April 1998, she took her back to the hospital for a checkup, and the doctor diagnosed her with failure to thrive. On cross-examination, she failed to accept responsibility for Felicia's condition and admitted that she missed numerous parenting classes and medical appointments.

Margaret Washington, Felicia's paternal grandmother, next testified that the parents cared for the child and, in her opinion, Felicia should be returned to her home.

Steve DeJohn, the guardian *ad litem*, recommended that permanent custody be granted to CCDCFS.

Therefore, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the trial court's grant of permanent custody is not against the manifest weight of the evidence. Accordingly, this assignment of error is overruled.

■ Washington asserts that the trial court committed prejudicial error when it admitted the psychological evaluation into evidence. We agree.

Juv.R. 32(A) states:

"The court may order and utilize a * * * mental examination at any time after the filing of a complaint under any of the following circumstances: * * *(3) Where a material allegation of a neglect, dependency, or abused child complaint relates to matters that a history or examination may clarify."

Further, Juv.R. 34, which addresses dispositional hearings, states:

"(B)(2) Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including but not limited to, hearsay, opinion, and documentary evidence * * *."

However, division (I) provides that the Rules of Evidence shall apply in hearings on motions for permanent custody.

Although this a matter of first impression for this court, we are guided by the court in *In re Reeves* (June 7, 2000), Summit App. Nos. 19650, 19669, 19672, 19674, 19705, 19706 and 19707, unreported, 2000 WL 727532, which stated:

"CSB has asserted that, pursuant to Juv.R. 34(B)(2), the rules of evidence did not apply at the permanent custody hearing. CSB, therefore, has contended that the juvenile court has discretion to admit hearsay testimony into evidence. CSB, however, has repeatedly failed to recognize the entire content of Juv.R. 34(B)(2). See, *e.g., In re Swisher* (April 23, 1997), Summit App. No. 17952, unreported, at 10 [1997 WL 209132]. Juv.R. 34(B)(2) provides: *Except as provided in division (I) of this rule,* the court may admit evidence that is material and relevant, including, but not limited to hearsay, opinion, and documentary evidence. * * * Juv.R. 34(I) specifically states that in a hearing on a motion for permanent custody the rules of evidence shall apply. In the instant appeal, the purpose of the hearing was to determine whether to grant CSB's motion for permanent custody. Because the rules of evidence did apply in the hearing below, CSB's assertion is without merit." (Emphasis added.)

In this instance, CCDCFS sought permanent custody of Felicia. The Rules of Evidence applied during the permanent custody hearing and, as such, the report of the psychological evaluation of the parents constituted inadmissible hearsay. The trial court erred, therefore, in allowing its admission into evidence.

Accordingly, this assignment of error is well taken and the matter is reversed and remanded for a new hearing as to Washington. The juvenile court is instructed to conduct a new permanent custody hearing.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

TIMOTHY E. MCMONAGLE, P.J., and JAMES D. SWEENEY, J., concur.