**In re MACK. (Four Cases.)**

[Cite as *In re Mack*, 148 Ohio App.3d 626, 2002-Ohio-4161.]

Court of Appeals of Ohio,
Third District, Crawford County.

Nos. 3–02–19, 3–02–20, 3–02–21 and 3–02–22.

Decided Aug. 15, 2002.

---

Shane M. Leuthold, for appellant.

Michael J. Wiener, for appellee.

SHAW, Presiding Judge.

{¶ 1} Appellant Edwin Mack appeals four judgment entries of the Crawford County Common Pleas Court, Juvenile Division, granting permanent custody of his four children to the Crawford County Children Services Board ("CSB").

{¶ 2} CSB was granted emergency temporary custody of the appellant's four children, Tonya, Crystal, Jonathan, and Tara Mack, on August 2, 1999, due to alleged neglect. At the time of the children's removal, they were in the sole care of their father, the appellant. When CSB removed the children, they were dirty, their hair was infested with lice and nits, the home was unclean, and the appellant was preparing to move the children into a different home, as he had repeatedly done in the past.

{¶ 3} The children were adjudged neglected on October 20, 1999, and CSB was granted temporary custody at that time. The court further ordered that a case plan aimed at reunification of the children with their parents be established. In addition, the trial court ordered the appellant to submit to a full-scale psychological evaluation, including a substance-abuse inventory. The court also ordered the appellant to pay child support for the children and to provide the child support enforcement agency ("CSEA") with all necessary employment information, including any changes in employment while the children were in CSB's care, in order to establish a wage withholding. The appellant was also ordered to pay the costs of the proceeding.

{¶ 4} Shortly thereafter, a case plan was created by social worker Dave Coulter in an effort to reunify the family. The case plan required the appellant to submit to both a psychological and substance-abuse evaluation, attend a six-session parenting class, find and maintain a safe and stable home for the four children, find suitable employment, which would enable him to meet his support obligations, and ensure that the children had proper hygiene. The plan also called for completion of these requirements within six to twelve months.

{¶ 5} A review hearing was held on July 6, 2000. The court found that the appellant had not substantially complied with the case plan. Thus, the court continued the conditions of its October 20, 1999 judgment entry. In addition, the court specifically found that the appellant had not completed the previously ordered full-scale psychological evaluation and reaffirmed its order for the appellant to do so. On August 31, 2000, this case came on for hearing for an extension of the grant of temporary custody of the children to CSB. However, the matter was continued at the request of appellant so that he could secure legal representation. While allowing the continuance of the hearing, the court once again continued the disposition of the October 20, 1999 judgment entry. A hearing was set for this matter on September 12, 2000, but appellant requested a further continuance to obtain representation. The continuance was granted, and the orders of October 20, 1999, remained in effect. On October 18, 2000, CSB was granted an extension of its temporary custody of the children until February 4, 2001. CSB then filed for permanent custody of the four Mack children on December 12, 2001. On February 8–9, 2001, a permanent custody hearing was

held. At this time, both the state, on behalf of CSB, and the appellant presented witnesses. The mother, although represented by counsel, was not present. The court found the motion well taken and granted permanent custody of the four children to CSB on March 5, 2002. These appeals followed, and the appellant now asserts two assignments of error.

{¶ 6} "Whether the court-ordered psychological examination of the appellant was inadmissible hearsay."

{¶ 7} "Whether the trial court's decision to grant children services' motion for permanent custody was against the manifest weight of the evidence."

{¶ 8} As these two assignments of error are related, they will be discussed together. Our review of this matter begins by noting that "[i]t is well recognized that the right to raise a child is an 'essential' and 'basic civil right.' " *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, citing *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. Thus, "a parent's right to the custody of his or her child has been deemed 'paramount' " when the parent is a suitable person. Id. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a 'substantial right[.]' " *In re Murray* at 157, 556 N.E.2d 1169. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." *In re Hayes* at 48, 679 N.E.2d 680. Thus, it is within these constructs that we now examine the proceedings in the lower court.

{¶ 9} The Rules of Juvenile Procedure state that a "court may order and utilize a * * * mental examination at any time after the filing of a complaint * * * [w]here a material allegation of a neglect * * * complaint relates to matters that a history or examination may clarify[.]" Juv.R. 32(A)(3). In addition, Juv.R. 34(B)(2) reads as follows: "Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence[.]" However, division (I) of this rule provides that "[t]he Rules of Evidence shall apply in hearings on motions for permanent custody." Juv.R. 34(I); see, also, *In re Washington* (2001), 143 Ohio App.3d 576, 581, 758 N.E.2d 724.

{¶ 10} In this instance, CSB sought permanent custody of the four Mack children. Therefore, the Rules of Evidence applied during the permanent custody hearing. The Rules of Evidence prohibit the use of hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C); Evid. R. 802. Hearsay is admissible only if it meets one of the exceptions enumerated in the Rules of Evidence. Evid. R. 802. The

report of the psychological evaluation contained the opinion of Dr. Don McIntire, the psychologist who examined the appellant, yet he did not testify at the permanent custody hearing. The report was offered in evidence to aid in proving that the appellant was not a suitable caretaker for the children, and, as such, constituted inadmissible hearsay. Therefore, the trial court erred in allowing its admission into evidence. See *In re Washington*, 143 Ohio App.3d at 582, 758 N.E.2d 724.

{¶ 11} Although the trial court erred in admitting the psychological report, our inquiry does not end there. This court has previously held that an "[e]rror in the admission of evidence is not ground for reversal unless substantial rights of the complaining party were affected or it appears that substantial justice was not done." *Petti v. Perna* (1993), 86 Ohio App.3d 508, 514, 621 N.E.2d 580. Further, "[i]n determining whether a substantial right of a party has been affected, the reviewing court must decide whether the trier of fact would have reached the same decision had the error not occurred." Id., citing *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690. In making our determination, we will also address the appellant's second assignment of error, which alleges that the trial court's decision to grant permanent custody was against the manifest weight of the evidence, without considering the psychological evaluation.

{¶ 12} In deciding whether to grant permanent custody of a child to a party who has so moved, R.C. 2151.414(B)(2) requires a court to grant permanent custody of a child to the moving party "if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" *and* determines that permanent custody is in the best interest of the child.

{¶ 13} The court must determine by clear and convincing evidence that one or more of the sixteen factors listed in R.C. 2151.414(E) exist in order to find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E); see, also, *In re William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738, syllabus (stating that a court must find one of the eight enumerated factors in R.C. 2151.414[E], which has since been amended to include a total of sixteen factors). In addition, the court must determine that permanent custody is in the best interest of the child by considering all relevant factors, including, but not limited to, the five factors listed in R.C. 2151.414(D).

{¶ 14} In the case sub judice, the trial court found "by clear and convincing evidence that the child[ren] should not be placed with either parent because they have continuously failed to substantially remedy the conditions causing the

child[ren] to be placed outside the home and have demonstrated a lack of commitment toward the child[ren][.]" These two reasons are enumerated factors in R.C. 2151.414(E)(1) and (4), respectively. Thus, we must examine the record to determine whether there was clear and convincing evidence to support the trial court's finding as to this issue without considering the psychological report.

{¶ 15} The social worker who first removed the children, Rhonda Gilbert, testified that the children were removed from appellant's care because they were filthy and truant, and lacked basic needs, and that various children's services agencies had attempted to improve the children's living conditions but to no avail because appellant would move his family to another jurisdiction before the children could be removed from his care. Pursuant to court order, CSB created a case plan for the Mack family in an effort to reunify the children with their father. The goals of the case plan were developed to remedy the conditions that caused the removal of the children.

{¶ 16} The undisputed testimony revealed that the case plan developed by CSB and ordered by the trial court in 1999 required the appellant to undergo a substance-abuse evaluation within six to twelve months but that he refused to give a urine sample until some fifteen months later. Likewise, appellant was ordered to undergo a full-scale psychological examination within the same time frame, but he did not begin the examination until fifteen months after it was ordered because the psychologist could not adequately examine him until the substance-abuse evaluation was completed. The appellant maintains that he did not fully understand that he needed to comply with this portion of the case plan in order to keep his children. However, the evidence revealed that this portion of the plan was explained to him on numerous occasions and by more than one person, including the court. Thus, the evidence demonstrated that appellant did not timely complete this case plan goal.

{¶ 17} The case plan also provided two other goals: (1) that appellant become financially able to support himself and his children and (2) that he be able to provide a safe and stable home for the children within six to twelve months. However, the testimony revealed that appellant failed to comply with the court's order to apprise CSEA of his employment and any changes made thereto. Appellant, himself, admitted to changing jobs on at least three occasions without informing CSEA and to not meeting his court-ordered child support obligations. Appellant's stated reason for not paying child support was that he had to support himself. In addition, appellant was arrested for unpaid fines the night before the permanent custody hearing and had not paid any of the court costs, which he was ordered to pay in the court's October 20, 1999 judgment entry. As for housing, the evidence revealed that at the time of the permanent custody hearing, the appellant was living in a hotel, had been evicted from a prior residence because

he paid only three months' rent although he lived there for nearly eleven months, and did not currently have a place where he could live with the four children. In addition, the state presented a judgment entry ordering the appellant to pay over $3,000 in back rent. Thus, in approximately eighteen months, he had yet to complete these two goals of the case plan because he was economically unstable and unable to provide housing for his children.

{¶ 18} The case plan also required appellant to complete a six-session parenting class within six to twelve months. Appellant admitted only to attending two sessions thus far. His stated reason for not completing this case plan goal was that he could not find transportation. However, Dave Coulter, his case worker, testified that the sessions were held at several different times in order to accommodate a variety of schedules and that he informed appellant that he would try to help him get to these sessions but that appellant told him only once that he needed transportation assistance. Having failed to attend all six sessions, appellant had not completed this case plan goal either.

{¶ 19} The final case plan goal required appellant to properly maintain his children's hygiene. The testimony demonstrated that ascertaining whether appellant was able to attain this goal was not possible because the children were permitted to see him only one to two hours per week with no overnight visitations. However, the case worker testified that overnight visitations were not permitted because appellant had not completed the psychological evaluation despite being told that this was necessary in order to extend his time of visitation with the children or to have the children overnight.

{¶ 20} The appellant admitted during his testimony that he knew that the case plan would have to be completed in order for the family to be reunified. However, appellant could provide no reason for not informing CSEA of his employment and changes thereto. In addition, appellant admitted to fighting the case plan and the court orders simply because he thought the system was fighting him, despite being told that he needed to comply in order to get his children back. Also, the appellant could not provide the court an explanation of where he would live in the event he would get custody of the children or even overnight visits, as he was living in a motel room. Moreover, Dave Coulter testified that in the 44 to 45 times that he witnessed appellant visit the children, he had not seen appellant demonstrate effective parenting, that he would not consider appellant's hotel room stable housing, and that he would not consider appellant to be economically stable. In addition, the undisputed evidence demonstrated that the mother had made little to no effort to reunify with her children or to remedy the situation. Based upon the aforementioned evidence, the trial court did not err in finding that there was clear and convincing evidence that the children should not be placed with the appellant because he continuously failed to substantially remedy

the conditions causing the children to be placed outside the home and that appellant demonstrated a lack of commitment towards the children.

{¶ 21} The trial court then had to consider whether permanent custody was in the best interests of the children. R.C. 2151.414(D) requires the court to consider all relevant factors, including the five factors listed in this section, in determining the best interest of a child. These include the relationship and interaction between the child and his or her parents, siblings, and others, the wishes of the child, the custodial history of the child, and the "child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1) through (4).

{¶ 22} The evidence demonstrated that the children were comfortable when visiting with the appellant, and the case worker testified that he felt that appellant loved his children. However, the children remembered being dirty, having lice, not eating nutritious meals, moving around a lot, losing their toys when the landlord locked the family out of their home, being hit by the appellant, and constant fighting between themselves without interference from the appellant. Although the in-camera interviews of the children revealed that they loved their father, each was concerned about returning to him and some expressed a desire to remain with their foster parents. In addition, the testimony revealed that the children were more aggressive and harder to control when all together and exhibited a higher level of aggression than other children their ages, and that the appellant was unable to properly control and discipline them. Furthermore, the testimony revealed that two of the children had to be separated from the others while in foster care because of the behavioral problems the children presented when all four were in the same foster home.

{¶ 23} The guardian ad litem's report indicates that he thought that it was in the children's best interest to be placed in the permanent custody of CSB. The social worker testified that he did not believe that it would be in the best interest of the children to be placed back with the appellant. In addition, he testified that all four children were adoptable, especially the two younger ones, but that all four children would not likely be adopted by the same family. Given the evidence before the court, we do not find that the court erred in determining that permanent custody to CSB was in the children's best interest.

{¶ 24} Although the court relied upon the psychological examination in determining that the appellant's actions and inaction were a chronic problem and that he was resistive, oppositional, uncaring, and limited in cognitive ability, the court did not make this determination based solely upon the examination. The court further explained its reasoning for making its decision to grant permanent custody, and this reasoning was supported by clear and convincing evidence

unrelated to the psychological report. Thus, when considering the evidence before the court without the benefit of the psychological report, the trial court's decision was not against the manifest weight of the evidence. Therefore, the admission of this report did not affect a substantial right of the appellant because the trier of fact would have reached the same decision had this error not occurred.

{¶ 25} For these reasons, both assignments of error are overruled, and the judgments of the Common Pleas Court, Juvenile Division, of Crawford County, Ohio, are affirmed.

Judgments affirmed.

THOMAS F. BRYANT and HADLEY, JJ., concur.