{¶ 29} I respectfully dissent. Today, the majority affirms the termination of Harold Bradford's parental rights in contravention of well stated and firmly established law.
 {¶ 30} A parent has a fundamental right to care for and have custody of his or her child. In re Shaeffer Children (1993),85 Ohio App.3d 683, 621 N.E.2d 426; citing Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388. Indeed, the United States Supreme Court has stated, "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, " Stanley v. Illinois
(1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-1213; citing Prince v.Massachusetts (1944), 321 U.S. 158, 166, 64 S.Ct. 438. Therefore, the termination of parental rights is an alternative of last resort. See Inre Wise (1994), 96 Ohio App.3d 619, 645 N.E.2d 812; In re Cunningham
(1979), 59 Ohio St.2d 100, 391 N.E.2d 1034. Contrary to their common use, these holdings are statements of law, not mere catch phrases suitable for use as introductory disclaimers to injustices forthcoming.
 {¶ 31} Where a parent stands to lose their right to assume the care of their child, due process requires the State to prove that applicable statutory factors have been met by clear and convincing evidence. In re Rodgers (2000), 138 Ohio App.3d 510, 741 N.E.2d 901. Thereafter, a reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. Id, citing In reWilliam S. (1996), 75 Ohio St.3d 95, 661 N.E.2d 738.
 {¶ 32} In the case at bar, the evidence is abundantly clear that the trial court did not follow the relevant statutory requirements. R.C.2151.414(B)(1) provides in pertinent part:
 [T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 33} R.C. 2151.414(B)(1) (emphasis added).
 {¶ 34} Regarding the best interests of a child, R.C. 2151.414(D) directs the trial court to consider any relevant evidence and an enumerated list of five factors. Next, as to the determination of whether a child can be placed with the parents within a reasonable period of time, R.C. 2151.414(E) provides that a court shall consider all relevant evidence plus a list of sixteen factors. As recognized by this court in,In re Mack, 148 Ohio App.3d 626, 2002-Ohio-4161, 774 N.E.2d 1243, in order to find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the trial court must determine by clear and convincing evidence that one or more of the sixteen factors listed in R.C. 2151.414(E) exist. Id. at ¶ 13. Clear and convincing evidence is that evidence which creates a firm belief as to the facts sought to be established. Rodgers, supra at 519, citing Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118.
 {¶ 35} In the matter sub judice, the trial court satisfied the first prong of R.C. 2151.414(B)(1) when it concluded that "granting permanent custody to the Allen County Children's Services Board is in the best interests of the child." With respect to Josey's ability to be placed with her father within a reasonable time, the trial court made one finding pursuant to R.C. 2151.414(E)(1), which provides:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
 {¶ 36} This solitary finding by the trial court is wholly unsupported by clear and convincing evidence.
 {¶ 37} "The key to a finding pursuant to R.C. 2151.414(E)(1) is whether the parent has substantially remedied the problem or problems which prompted the children's removal from the home." In re Sara H. (Dec. 16, 1994), Lucas App. No. L-94-116. The trial court adjudicated Josey dependent based on the inability of Angela Rinaldi to provide for her care. Harold Bradford played no role in Josey's removal from Angela Rinaldi's home. Harold was not even considered in Josey's dependency adjudication, as his parentage had not yet been determined. Thus, Josey has never been removed from Harold's care. Furthermore, Harold has complied with every order given to him in an effort to assume custody of Josey.
 {¶ 38} The majority places great weight upon the findings of the guardian ad litem, specifically her concerns with Harold's prior history of domestic abuse and recent troubles with his teenage daughter. First of all, while I agree that the guardian ad litem's recommendation must be considered in conjunction with a determination of "best interests of the child," the guardian's recommendation does not change the fact that the trial court's finding pursuant to R.C. 2151.414(E)(1) is not supported by clear and convincing evidence. The majority ignores the fact that R.C.2151.414(B)(1) must be complied with, no matter what the guardian ad litem recommends.
 {¶ 39} Second, I do not find the guardian ad litem's recommendation to be altogether determinative of Harold's ability to assume care of his daughter. The magistrate listened to the guardian's concerns and in the July 3, 2001, decision extending temporary custody to the agency, made the following observations:
 It does not appear as unlikely that the child could eventually be placed with the father. There are a number of issues which need to be seriously and effectively addressed, particularly his apparent inability to at this point control his anger and inappropriate parenting techniques. But if he continues to address the anger control issues, participates in parenting classes to learn more effective and less violent parenting techniques, and can demonstrate the ability to apply these techniques, it may be possible that the child can be placed in his care in the reasonably foreseeable future.
 {¶ 40} Thereafter, the magistrate recommended that Josey remain in the temporary custody of the Agency and that Harold be required to participate in individual counseling to address his anger management issues. The trial court adopted the magistrate's decision on July 24, 2001, and Harold was ordered to attend the counseling as recommended and the agency was ordered to modify Josey's case plan to address Harold's problem with anger.
 {¶ 41} In compliance with the order and the resulting case plan, Harold completed a "Changes through Choices" program to address his convictions for child endangering (1985) and domestic abuse (1992). Additionally, Harold underwent individual counseling to address his "issues" with anger and maintained a perfect attendance record throughout the counseling. At Josey's permanency hearing, Harold's counselor, Dr. Tyffani Monford, testified that she observed improvements in his behavior.[1]
 {¶ 42} The record is replete with further evidence of Harold's efforts to remedy any and all conditions preventing him from obtaining custody of Josey. He attended every scheduled court appearance and initiated his involvement in the "Choices" program. Harold never missed a scheduled visit with Josey and consistently utilized the entire two-hour period to establish a relationship with the child. Harold and his wife welcomed social workers into their home to inspect it for infant safety and when the Agency pointed out minor safety concerns, they took action to remedy the problems. Indeed, the Agency found Harold's home to be clean and appropriate for children.
 {¶ 43} On the other hand, the Agency showed little commitment to addressing the issues that prevented Harold from assuming custody of Josey. The Agency conducted a review of the case plan on August 27, 2001, twenty-three days after the trial court adopted the magistrate's decision and ordered Appellant to attend anger counseling. Already, this review indicates that the Agency is merely awaiting the permanency hearing. Less than a month prior, the magistrate opined that it was foreseeable that Josey could be placed with her father within a reasonable time provided that he receives counseling, and yet, the Agency's review mentions no intent or plan to achieve this result. Before Harold had even gone to his first counseling session with Dr. Monford, the agency had already decided to move for the termination of parental rights. This is an interesting, albeit inconsistent, illustration of the Agency's stated goal of "parent and child reunification."
 {¶ 44} By far the most compelling feature of the case at bar is the fact that Harold Bradford and his wife currently have custody of three minor children, none of whom have been adjudicated abused, neglected or dependent. What's more, the record includes evidence that Appellant obtained custody of at least one of these children from theAgency in the recent past. We are unable to reconcile the Agency's position that Harold and his wife are fit to care for these children, but not Josey.
 {¶ 45} While the majority and I may disagree as to the weight and significance of certain evidence presented below, the majority cannot deny that Harold Bradford did not fail to remedy the reasons for Josey's removal from Angela Rinaldi's home. The majority cannot deny that Josey was never removed from Harold Bradford's home or custody. The majority cannot deny that Harold Bradford was not a factor in Josey's dependency adjudication and since that adjudication, has complied with every single order given to him. Though the majority cannot deny these things, the majority affirms the trial court's finding that Harold failed to substantially remedy the problem or problems which prompted the child'sremoval from the home. I am unable to reach such an irrational conclusion, and accordingly would sustain Appellant's second and fourth assignments of error, thereby reversing the trial court's order.
[1] The trial court, in its decision to terminate Harold's parental rights, declared that Dr. Monford terminated the counseling "for the reason that no one could be helpful to the father in managing his anger until he assumed responsibility for his actions and that she had nothing to offer that would change his behavior." However, the trial court's finding is a gross misstatement and unsupported by the record. When asked why she was no longer treating Appellant, Monford responded, "[B]ecause Harold has expressed a desire to be given an opportunity to utilize some of the strategies in his everyday life instead of continuing therapy." When asked if she thought anyone would be able to help Harold Bradford with regard to controlling his anger, Dr. Monford stated, "At this point, I think it would be up to Harold." The therapist in no way indicated that further treatment was useless or that she had nothing to offer that would change his behavior.