JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, ("mother") appeals the trial court's decision, following trial, to grant a motion by appellee, the Cuyahoga County Department of Children and Family Services (the "County"), to modify temporary custody to permanent custody[1] of mother's 21-month old-daughter,[2] M.H. For the reasons that follow, we affirm the judgment of the trial court.
{¶ 2} Mother has had a ten-year history of drug dependency that began prior to M.H.'s birth in 1999 and continued thereafter. (Tr. at 10, 87.) Mother tested positive for cocaine during a prenatal doctor's appointment when she was carrying M.H. (Tr. at 10.) When M.H. was born, the County allowed mother to retain custody of her child so long as she completed the drug treatment program at the Hitchcock Center for Women. (Tr. at 10.) According to Ms. Yonna Fields, the social worker assigned to mother, mother tested positive for cocaine in June 2000 and was not willing to sign a contract to remain in Hitchcock's treatment program. As a result of mother's refusal, the County obtained emergency custody of M.H. (Tr. at 13.)
{¶ 3} At the hearing on the County's motion for permanent custody, evidence indicates that mother has been in and out of approximately 8 to 12 different drug treatment programs and has completed only two or three of them. (Tr. at 57-58, 99-100.) The last drug treatment program mother completed before the permanent custody trial was with Fresh Start in July 2001. (Tr. at 99.) Mother stated that her longest period of sobriety occurred from 1992 to 1996. At trial, evidence also established that mother tested clean on every other urine screen given by her in the past six months but she missed two urine screenings. (Tr. at 78, 87, 97-98.)
{¶ 4} Ms. Fields testified that, since the County took emergency custody of M.H. in February 2000, mother has been unable to keep stable housing and failed to maintain a regular visitation schedule with her daughter. (Tr. at 17-20.) The County filed a case plan in March 2000 setting forth the conditions mother had to satisfy before M.H. would be returned to her care. The plan required that mother's sobriety be maintained and M.H.'s paternity established. (Tr. at 19.)
{¶ 5} By May 2000, mother had still not completed her case plan, so temporary custody of M.H. was awarded to the County. From December 2000 to March or April of 2001, mother informed Ms. Fields that she was using drugs and was intentionally not participating in the assigned case plan meant to assist her in regaining custody of her daughter. (Tr. at 20.) Ms. Fields also told the court that during this same time period mother did not visit M.H.
{¶ 6} Ms. Fields testified that in April 2000 she learned that mother was incarcerated for soliciting prostitution. Mother admits that the offense was related to her drug use. (Tr. at 87, 103.) While incarcerated, mother was given and did complete an inpatient treatment program. In July 2001, as part of her probation, mother was referred to the Aftercare treatment program, which required that on a weekly basis she randomly screen for urine and report to her probation officer. (Tr. at 75.) However, mother did not complete the program. Over the objection of mother's counsel, Ms. Fields explained that when she made inquiries about mother's progress, she learned that mother had stopped not only attending the treatment meetings, but also reporting to her probation officer. (Tr. at 22-24.) As of the trial date, mother had still not completed the Aftercare program. (Tr. at 18-19, 65-68, 75, 87.)
{¶ 7} Ms. Fields described mother's erratic employment history; mother has never been able to keep a job for more than four months. (Tr. at 23, 56-57.) At the time of trial, mother had no income and admitted to quitting her latest job one week before. As explanation she cited the stress of going to school, attempting to comply with the Aftercare program, reporting to probation, visiting with her daughter, and attending Narcotics Anonymous meetings. (Tr. at 25, 78.)
{¶ 8} Ms. Fields further reported that mother has never been able to maintain adequate housing and that, at one time, she had been evicted by one of her landlords. Over the objection of mother's counsel, Ms. Fields testified that she had read mother's eviction notice and learned that she had been late paying rent,[3] there had been alcohol abuse on the premises, and she and a guest had disturbed the peace. (Tr. at 18.)
{¶ 9} Testifying about the eviction proceedings, mother admitted she had been evicted, but explained the accusations in the notice were untrue and the eviction was dismissed from court, but then refiled. (Tr. at 94-96.) Mother further testified that she has lived in three different places in the past two years and that she had been living at her most current address for only two weeks. (Tr. at 70.) She stated she has not used drugs for the past six months and wants her daughter back. She noted she is trying to improve her life by attending Cuyahoga Community College. Asked about M.H.'s biological father, who has never been identified, mother testified that she did not know who the father might be.[4] It is undisputed that there are no relatives who can take M.H. and that M.H. has bonded with her foster mother, with whom she has been living for more than a year. (Tr. at 25-28.)
{¶ 10} M.H.'s guardian ad litem told the court that because mother has been in and out of treatment programs she is too unstable to have custody of her daughter and, therefore, the child should be placed in the permanent custody of the County. (Tr. at 148.)
{¶ 11} Following the trial, the court held that permanent custody was warranted because mother failed continuously and repeatedly to substantially remedy the conditions causing the removal of M.H. from her care; that mother's chemical dependency was so severe she was unable to provide an adequate home for M.H.; that the parents have demonstrated a lack of commitment to the child by failing to visit regularly, support, or communicate with the child when they were able, or by other actions indicating an unwillingness to provide an adequate permanent home for M.H.; that mother has had her parental rights involuntarily terminated with respect to an older sibling of M.H.; that the County has used reasonable efforts to try to reunify the family; and that relatives were unable or unwilling to provide care for M.H.
{¶ 12} Mother has presented four assignments of error for review. Because the second, third, and fourth assignments of error involve mother's challenge to the award of permanent custody to the County and the evidence upon which that decision is based, we address them together.
{¶ 13} ASSIGNMENT OF ERROR II:
 {¶ 14} THE TRIAL COURT VIOLATED [MOTHER'S] STATE AND FEDERAL DUE PROCESS RIGHTS BY COMMITTING HER DAUGHTER, [M.H.], TO THE PERMANENT CUSTODY OF THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES WHEN CLEAR AND CONVINCING EVIDENCE DID NOT SUPPORT ITS DECISION.
{¶ 15} ASSIGNMENT OF ERROR III:
 {¶ 16} THE TRIAL COURT VIOLATED [MOTHER'S] STATE AND FEDERAL DUE PROCESS RIGHTS BY TERMINATING [MOTHER'S] PARENTAL RIGHTS WHEN THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
{¶ 17} ASSIGNMENT OF ERROR IV:
 {¶ 18} THE TRIAL COURT VIOLATED [MOTHER'S] DUE PROCESS RIGHTS AND HER ESSENTIAL RIGHT TO PARENT HER CHILD BY FINDING THAT A GRANT OF PERMANENT CUSTODY WAS IN THE BEST INTEREST OF [M.H.].
{¶ 19} In these assignments of error mother argues that the evidence does not support the trial court's award of permanent custody and that the court erred in finding that it was in M.H.'s best interests to be placed in the County's permanent custody.
{¶ 20} When evaluating whether a judgment is against the manifest weight of the evidence in a civil action, the court uses virtually the same standard of review as in the criminal context.[5] In reWashington (2001), 143 Ohio App.3d 576, 758 N.E.2d 724. In re M.M. (Feb. 7, 2002), Cuyahoga App. No. 79947 this court explained that standard as applied to a custody case:
 {¶ 21} In civil cases, we review a manifest weight challenge to determine whether some competent, credible evidence supports the judgment. The criminal standard, while stated in more detail and arguably requiring a more searching review, also focuses on the credibility of evidence, allowing a judge or reviewing court to consider not only the sufficiency of evidence, but the quality of evidence introduced. While a juvenile custody proceeding is not a criminal matter, it is consistently recognized as implicating important rights deserving of more scrutiny than the ordinary civil proceeding. Therefore, to the extent the civil manifest-weight review is less demanding than that in criminal matters, in juvenile proceedings such review should more closely approximate the criminal standard. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541; State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
{¶ 22} Additionally, the court in State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, stated:
 {¶ 23} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's, supra, at 1594.
{¶ 24} The juvenile court has had the opportunity to view the witnesses and evaluate their demeanor. See In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424. Accordingly, before this court will reverse a judgment as being against the manifest weight of the evidence, we must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
{¶ 25} The termination of parental rights is governed by R.C.2151.414. Before a juvenile court may terminate parental rights with regard to a child who is neither abandoned nor orphaned, it must apply a two-prong test measured by clear and convincing evidence. See, In reCarter (Nov. 2, 2000), Cuyahoga App. No. 76463.
{¶ 26} As this court stated in In re E.M. (Nov. 8, 2001), Cuyahoga App. No. 79249:
 {¶ 27} Clear and convincing evidence is that measure or degree of proof which is more that a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. A determination of whether something has been proven by clear and convincing evidence will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. If a burden of proof must be met with clear and convincing evidence, a reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy that burden of proof.
{¶ 28} In re: E.M., citing Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613. The court does not need to determine that the child cannot or should not be placed with either parent within a reasonable time because the child has been in the temporary custody of one or more public children services agencies for more than 12 of the last 22 months. See R.C. 2151.414(B); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738.
{¶ 29} In determining what is in the best interests of the child under R.C. 2151.414(D), the court should consider all relevant factors, including, but not limited to, the following statutory factors:
 {¶ 30} (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 31} (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 32} (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 33} (4) The child's need for legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 34} (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
{¶ 35} After considering the factors, the trial court must determine by clear and convincing evidence, whether one or more of the conditions enumerated in R.C. 2151.414(E) exist with respect to the child's parent. In re Washington, supra; In re William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738.
{¶ 36} Pertinent factors for the instant case include the following: (1) the parent failed to remedy problems that initially caused the child to be removed from the home; (2) the parent demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so; (3) the parent had been repeatedly incarcerated, which then prevented the parent from providing care for the child; and (4) the parent was unwilling to provide food, clothing, shelter, and other basic necessities for the child.
{¶ 37} Evidence in the record indicates mother did not substantially complete her case plan. (Tr. at 19-20, 93.) Noncompliance with a parent's case plan is a ground for termination of parental rights. In re Brofford (1992), 83 Ohio App.3d 869, 878, 615 N.E.2d 1120. And even though mother had been drug-free for the six months preceding trial, her erratic history of drug-use and her unsuccessful attempts at so many other drug treatment programs does not leave this court convinced of mother's ability to remedy her drug dependency, on a long-term basis. (Tr. at 57-58, 87, 99-100.) At the time of trial, mother was on probation for an offense which she admits was related to her drug use. (Tr. at 103.) Mother was not employed at the time of trial and had no income, facts evidencing instability. (Tr. at 23, 25, 56-57, 78.) When asked why she wanted M.H. back, mother stated she wanted to love her, to give her a better life, and to let her know she is worthy. This court is not persuaded that mother can accomplish these ends in light of evidence that mother has done little to make a better life for herself, let alone her daughter. On the record before us, there was clear and convincing evidence indicating there was little likelihood mother could provide the care M.H. requires.
{¶ 38} Moreover, evidence that mother has spent little time with her daughter since she has been in the temporary custody of the County demonstrates mother's lack of commitment to the daughter. (Tr. at 17-20.) Ms. Fields testified, moreover, that the child has bonded with her foster mother. (Tr. at 25-28.)
{¶ 39} Obviously, M.H. is too young to express an opinion on what her wishes are. M.H.'s guardian ad litem, however, recommended placing her in the permanent custody of the County because mother is "continually in and out of programs and has difficulty maintaining a drug-free life * * * and she has not been stable." (Tr. at 148.)
{¶ 40} The third statutory factor requires us to evaluate the child's custodial history, which, in this case, shows that at the time of trial, M.H. had been in foster care for almost two years. During that time, mother hardly visited, never completed the required case plan, relapsed and/or continued her drug use — all indicative of her lack of commitment to her daughter. On the other hand, evidence does establish that M.H. has bonded with her foster mother, who has indicated a desire to adopt the child.
{¶ 41} On the record before us, considerations relating to the fourth factor also do not favor mother. The evidence is clear that mother has been unable to maintain stable housing or employment. Mother herself admitted that she has not kept a job for more than four months and that only a week before trial, which some might consider the most crucial event in her life, she voluntarily quit her employment. Mother also freely acknowledges that she has lived in three different places while M.H. has been in foster care and that she has been at her most current residence for only two weeks. None of these facts indicates that mother can or will provide a secure home for her daughter.
{¶ 42} The trial court clearly addressed the fifth factor: it found that mother's parental rights had been previously and involuntarily terminated with regard to M.H.'s older sibling.
{¶ 43} In addition to the foregoing enumerated factors, the trial court also determined that mother had done nothing to establish the paternity of her daughter and had not completed her case plan but the County had made reasonable efforts to reunite M.H. with mother.[6]
Moreover, no relatives were willing to care for M.H.
{¶ 44} Upon review, we find clear and convincing evidence in support of the judgment that it was in M.H.'s best interest to place her in the County's permanent custody. Mother's second, third, and fourth assignments of error are overruled.
{¶ 45} ASSIGNMENT OF ERROR I:
 {¶ 46} THE TRIAL COURT ERRED IN TERMINATING MS. DELANEY'S PARENTAL RIGHTS BASED UPON IMPROPERLY ADMITTED HEARSAY EVIDENCE.
{¶ 47} Mother contends that the social worker's statements about mother being on probation and failing to report to her probation officer were not only hearsay, but prejudicial because they allowed the court to conclude that she was still using drugs.
{¶ 48} Mother also argues that Ms. Field's statements about the reasons mother was evicted from one of her residences were also inadmissible hearsay and prejudicial.
{¶ 49} First, we note that mother never provided a specific objection based on hearsay, the first error raised in this appeal. Failure to object to the admission of evidence at trial or hearing, with a short statement of the grounds of the objection, however, constitutes a waiver of objection upon appeal. See Evid.R. 103(A)(1); In re Goolsby,
(Apr. 19, 2001) Cuyahoga App. Nos. 78014 and 78015.
{¶ 50} Because mother failed to object at trial on the specific grounds raised here, she has waived the issue, limiting us to a plain-error analysis. State v. Tibbetts, (2001), 92 Ohio St.3d 146;749 N.E.2d 226; In re E.M. (Nov. 8, 2001), Cuyahoga App. No. 79249.
{¶ 51} Plain error is found where a substantial right is affected through the erroroneous admission of obvious and prejudicial testimony which serves to undermine confidence in the verdict. See State v. Walker
(1981), 2 Ohio App.3d 483, 442 N.E.2d 1319.[7] In other words, even if Ms. Fields' statements are hearsay, we will not reverse the trial court on this issue absent prejudice to the outcome.
{¶ 52} Evid.R. 801(C) defines "hearsay" as "* * * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We acknowledge that "hearsay is not admissible in permanent custody hearings because they are adjudicatory in nature and require compliance with the rules of evidence. In re Brofford (1992), 83 Ohio App.3d 869,878, 615 N.E.2d 1120.
{¶ 53} At trial, Ms. Fields testified first about mother's conduct while she was on probation.
{¶ 54} Q: Has she completed the Aftercare?
{¶ 55} A: No, she hasn't.
{¶ 56} Q: Did she stop going or what was —
 {¶ 57} A: I haven't been able to verify that. She has been attending her Aftercare meeting. However, I spoke with the worker who was assigned to her case through the task program, and she informed me that —
{¶ 58} Mr. Keenan: Objection.
{¶ 59} The Court: Overruled. I'll allow it.
 {¶ 60} A: And she informed me that [mother] reported to her twice and then never returned, and in addition, the worker with the task program had been in contact with her PO officer, and was informed that [mother] has also stopped reporting there.
{¶ 61} (Tr. at 22.)
{¶ 62} Ms. Fields also stated what she learned about mother being evicted.
{¶ 63} Q: Did you see the eviction notice?
{¶ 64} A. Yes, I did.
 {¶ 65} Q: Did that notice cite the reason for the eviction?
{¶ 66} A: Yes. Basically, the reason —
{¶ 67} Mr. Keenan: Objection.
 {¶ 68} The Court: Overruled. I'll allow it. Go ahead.
 {¶ 69} A: The eviction notice stated that she had been late paying her rent, that she and her guest had disturbed the peace, that there was alcohol abuse on the premises, and, basically, that she was an unruly tenant.
{¶ 70} On cross examination, mother had the opportunity to explain in her own words about the eviction.
 {¶ 71} Q: Why did you leave that West 105 Street address?
{¶ 72} A: Because I was evicted.
{¶ 73} Q: Why were you evicted?
 {¶ 74} A: Initially, the eviction was — I was evicted — initially the eviction notice made accusations that I was disruptive to the other tenants. That was not — the landlord — that wasn't it was dismissed in the eviction court.
{¶ 75} * * *
 {¶ 76} Q: Isn't it true that you violated the Section 8 requirement?
 {¶ 77} A: Yes. Because the landlord went back and made a second motion for eviction after the first one was dismissed for nonpayment, and then you are automatically dismissed from the Section 8 for not paying the rent, which is not true.
{¶ 78} (Tr. at 95.)
{¶ 79} We agree that the complained of testimony constitutes hearsay. However, even if inadmissible evidence was admitted by the trial court, it must be shown that the court actually relied on that evidence in its judgment. In re Fountain (Feb. 24, 000), Cuyahoga App. No. 76650, at *18 citing In re Sims (1983), 13 Ohio App.3d 37, 41, 468 N.E.2d 111. A trial judge is presumed to be capable of disregarding improper testimony. In re Fountain, supra. The erroneous admission of hearsay evidence is harmless if other evidence, apart from the erroneously admitted evidence, has been offered to prove that which the challenged evidence was offered to prove. In re: Decker (1984), 20 Ohio App.3d 203,485 N.E.2d 751; In re: Reeves (June 7, 2000), Summit App. Nos. 19650, 19669, 19672, 19673, 19674, 19705, 19706, 19707.
{¶ 80} In the case at bar, nothing in the record indicates that the trial court relied on Ms. Fields' statements in its judgment. The record reveals, on the other hand, ample evidence supporting the trial court's award of permanent custody to the County without any consideration of Ms. Fields statements about mother's probation or the eviction.
{¶ 81} Evidence at trial indicated that mother failed to maintain a regular visitation schedule with her daughter. (Tr. at 17-20.) On the witness stand, mother admitted to years of drug use. (Tr. at 87.) She also conceded that though she has been in 8 to 12 different drug treatment programs, she has only completed two of them and the longest period of sobriety ended back in 1996. (Tr. at 100.) Mother had relapsed into drug use from December 2000 and until April 2001. (Tr. at 20.) Though her recent efforts are commendable, mother had only been drug-free for six months as of the trial date. (Tr. at 87.) She also admitted that she has been unable to keep a job or housing for any length of time. (Tr. at 70, 75, 93, 95.) The record shows, moreover, that, despite the case plan requirement that she establish M.H.'s paternity, mother has done nothing to accomplish this condition. (Tr. at 19, 93.)
{¶ 82} On the record before us, the court did not have to rely on the complained of statements in order to determine that M.H.'s best interests were served by being placed in the County's permanent custody. Mother's first assignment of error is without merit.
The judgment of the juvenile court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J. AND JAMES J. SWEENEY, J., CONCUR.
[1] On January 5, 2001, the County filed a Motion to Modify Temporary Custody to Permanent Custody and a Motion to Determine that Reasonable Efforts Were Not Required. The hearing on the County's motion was held on September 26, 2001.
[2] As a result of her drug addiction, mother's parental rights to a son born before M.H. were terminated in 1998 (Tr. at 59).
[3] Mother admitted that she did not pay the rent due.
[4] Initially, a man named as the alleged father of M.H. was excluded as M.H.'s biological father by genetic testing. Thereafter, Mr. Oliver Thompson was named as M.H.'s alleged biological father. Genetic testing also excluded Mr. Thompson. Even though excluded as M.H.'s biological father, Mr. Thompson filed a Motion for Legal Custody of M.H. That motion was denied when the trial court granted permanent custody of M.H. to the County. The denial of the motion is not part of this appeal, nor is Mr. Thompson a party to this appeal.
[5] As explained in State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717, the standard for assessing manifest weight is as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
[6] R.C. 2151.419
[7] Evid.R. 103, which controls rulings on evidence, states in pertinent part:
(A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;
* * *
(D) Plain Error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.