JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Cuyahoga County Department of Children and Family Services ("County"), appeals the trial court's denial of its Motion to Modify Temporary Custody to Permanent Custody. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On December 30, 1999, the county filed a complaint asserting that the minor children[1] of mother, N.B. and D.B., were neglected.[2]
The trial court granted the county emergency custody of the children in January, 2000 and granted it temporary custody in March, 2000. The county was granted an extension of temporary custody on December 5, 2000. Thereafter, on January 2, 2001, the county filed its motion for permanent custody of mother's twin children, N.B. and D.B. Trial on that motion was held on March 7, 2002.
 {¶ 3} At trial, evidence established that when she gave birth to the twins in March 1998, mother had a history of drug abuse. The children remained with mother until December 1999 when she gave birth to M.B. and tested positive for cocaine. As a result, all three children were removed from her custody and placed with their paternal grandparents. Before M.B. was born, a social worker discovered that mother was on probation for a kidnaping conviction in Texas. The parties agree mother has had a long history of drug abuse and continual relapses back into that abuse since she was fourteen years old. At the time of trial she was thirty-two.
 {¶ 4} In January 2000, mother was given a case plan. She completed the drug treatment portion of the plan, but not the rest of the plan, which included parenting classes and proving she could provide for her children's basic needs. By July 2000, the county lost track of mother, who admits she never completed her case plan. In October 2000, mother was arrested in Ohio for violating her Texas probation. She was extradited back to Texas where she remained until October 2001.
 {¶ 5} In December 2000, the children were sent to stay with their maternal aunt and uncle in North Carolina after it was determined that the paternal grandparents had failed to complete certain foster-care licensing requirements. Once at their aunt and uncle's, the children were observed to be confused and hyperactive. The trial court determined that even though the children failed to thrive while with their grandparents, it could not conclude that "this poor state can be attributed to mother. The evidence indicates that the [grandparents], and/or any other foster placement used by the agency, had failed to implement recommended services by the agency * * *." The court also determined the county's claim unfounded that its agencies had no contact from mother and that she had not had contact with the children while she was in Texas is unfounded. Instead, the court determined that mother had made contact with the aunt several times, but that the aunt either forgot or simply decided not to tell the children because of her own affection for them. The court found that mother had not abandoned the children.
 {¶ 6} While in Texas, mother completed a lock-down treatment program,[3] spent three months in a halfway house, and completed parenting classes. By January 2002, mother had moved into her own apartment and was employed. She testified that since her release from the halfway house, she had voluntarily sought support and other forms of assistance in order to overcome her drug problem. The evidence is uncontradicted that mother voluntarily attended counseling, attended AA meetings, underwent a psychological evaluation, random urine screens, and attended other community support programs available to her.
 {¶ 7} Mother's testimony that she has been sober since December 1999, when M.B. was born, is also unrebutted. There is no evidence mother ever withheld medical treatment or food from the children between the time of their birth in March 1998 and their removal in December 1999. There is no evidence the children were ever abused by mother.
 {¶ 8} Further, the court determined that, even though the county knew mother's whereabouts while she was in Texas, the county had done nothing during that time or upon learning she had successfully completed her case plan[4] to concurrently prepare for reunification. Mother testified that even though she was not prepared to take care of the children at the present time, she would be ready within six months. Mother stated she needed the additional time in order to arrange for proper housing. She also stated that if she could not secure that housing within six months, she and the children would stay in San Antonio with a long-time friend of her mother. In its entry, the trial court stated: "In determining whether the children cannot be placed with mother within a reasonable period of time or should not be placed with the mother, the Court finds that in consideration of the reasonable case planning of the agency, mother has attempted to substantially remedy the conditions causing the children to be placed outside the home, notwithstanding the agency's lack of diligent efforts. * * * [T]he children's current ages may neutralize a clear finding that permanent custody is in their best interests as they are both adoptable as well as potentially adaptable to returning to mother."
 {¶ 9} The trial court held that the county had failed to prove the allegations of its complaint/motion by clear and convincing evidence. The court denied the motion and extended the county's temporary custody for an additional six months. The county appeals and presents the following assignments of error for review.
I. The trial court erred and abused its discretion when it orderedN.B. and D.B. to remain in temporary custody beyond the maximum allowabletime in contravention of Ohio Law.
 {¶ 10} The county argues the trial court erred by extending its order of temporary custody for an additional six months. With this extension, the children were in temporary custody more than two years beyond the statutory limit set forth in R.C. 2151.353.
 {¶ 11} In In re Young Children (1996), 76 Ohio St.3d 632, 637,669 N.E.2d 1140, the Ohio Supreme Court held that the jurisdictional grant of R.C. 2151.353(E)(1) was not limited. "It seems abundantly clear that this provision was intended to ensure that a child's welfare would always be subject to court review. That is, given that a child, by virtue of being before the court pursuant to R.C. Chapter 2151, was at risk of some harm, the General Assembly provided for the child's safety and welfare by ensuring that the juvenile court would retain jurisdiction over the child through the age of majority. R.C. Chapter 2151 places no limitation on this general jurisdiction." Id.; In re: M.Z., Cuyahoga App. No. 80799, 2002-Ohio-6634, at ¶¶ 27 and 28; See In Re Cross,96 Ohio St.3d 328, 2002-Ohio-4183; In re: E.M., (Nov. 8, 2001), Cuyahoga App. No. 79249. Hence, "a judge may enter an order of disposition pursuant to § 2151.415(A) after the sunset date when the problems that led to the original temporary custody order remain unresolved." In re Young, at syllabus.
 {¶ 12} In the case at bar, mother still needs to secure appropriate housing and maintain her sobriety, in order to remedy two of the problems that led to the original temporary custody order. The trial court gave her an additional six months in order to resolve these matters. Under the authority cited above, the trial court did not err in extending the original order of temporary custody. This result is not only consistent with In re Young but is also inescapable because the trial court determined that the county had failed to meet its burden of proof by clear and convincing evidence.
 {¶ 13} We agree with appellee that were we to accept the county's argument, the county, in all cases which go beyond the two-year time period, could obtain permanent custody by default, regardless of whether it met its burden of proving that permanent custody was in the child's best interests. Such a result is not only contrary to what the legislature intended; it would offend a parent's constitutional right to due process. We decline to create such precedent. The county's first assignment of error is overruled.
II. The trial court erred and abused its discretion in finding thatthe children were not abandoned, in contravention of Ohio Revised Code2151.011(C).
III. The trial court erred and abused its discretion in failing tofind that N.B. and D.B. cannot or should not be placed with either oftheir parents within a reasonable time, as such finding was required byOhio Revised Code 2151.414(E).
IV. The trial court decision denying appellant's motion for permanentcustody was against the manifest weight of the evidence.
 {¶ 14} Because these assignments of error share a common basis in law, we address them together. First, the county complains that there was not enough evidence for the trial court to determine that mother had not abandoned her children under R.C. 2151.011(C).[5]
 {¶ 15} The statute provides, in part: "(C) For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."
 {¶ 16} The county argues that the statute and the weight of the evidence mandate the children be deemed abandoned as a matter of law because mother had no contact with them for more than ninety days between July 2000 and December 2000, a period of approximately four months.[6]In re Glenn (2000), 139 Ohio App.3d 105, 742 N.E.2d 1210, and R.C.2151.011(C). The county argues, furthermore, that because the children are abandoned, "the court must enter a finding that the child cannot or should not be placed with either of his parents within a reasonable time."
 {¶ 17} At trial, mother testified that before she went back to Texas, though her whereabouts were unknown to the county, she nonetheless continued to see the children while they were living with their paternal grandparents. Once back in Texas, she said she wrote to her children every month. There is no evidence contradicting this testimony.
 {¶ 18} From the record before us, therefore, we conclude that there is some competent, credible evidence supporting the trial court's finding that the mother contacted the children and therefore the children were not abandoned. This same evidence sufficiently supports the trial court's conclusion, furthermore, that the children could or should be placed with mother within a reasonable time pursuant to R.C. 2151.414(E).
 {¶ 19} We reject the county's interpretation of In reCampbell/Spicer, Stark App. No. 2202CA00056, 2002-Ohio-3696. Contrary to the county's reading, the court in that case did not grant permanent custody to the county solely because the mother was incarcerated. Custody was granted to the county because in addition to being incarcerated, she had failed to complete much of her case plan. In the case at bar, however, mother completed her case plan, is employed, has maintained sobriety since December 1999, and is working towards securing proper housing for herself and the children.
 {¶ 20} Next, the county claims that the manifest weight of the evidence does not support the trial court's decision that it is in the best interests of the children to return to their mother.
 {¶ 21} State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, explained the standard for assessing manifest weight as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 22} When evaluating whether a judgment is against the manifest weight of the evidence in a civil action, the court uses virtually the same standard of review as in the criminal context. In re Washington
(2001), 143 Ohio App.3d 576, 758 N.E.2d 724. In In re M.M. (Feb. 7, 2002), Cuyahoga App. No. 79947 this court explained that standard as applied to a custody case: "In civil cases, we review a manifest weight challenge to determine whether some competent, credible evidence supports the judgment. The criminal standard, while stated in more detail and arguably requiring a more searching review, also focuses on the credibility of evidence, allowing a judge or reviewing court to consider not only the sufficiency of evidence, but the quality of evidence introduced. While a juvenile custody proceeding is not a criminal matter, it is consistently recognized as implicating important rights deserving of more scrutiny than the ordinary civil proceeding. Therefore, to the extent the civil manifest-weight review is less demanding than that in criminal matters, in juvenile proceedings such review should more closely approximate the criminal standard. C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387,678 N.E.2d 541; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717."
 {¶ 23} Additionally, the Supreme Court in State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, stated: Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
 {¶ 24} The juvenile court has had the opportunity to view the witnesses and evaluate their demeanor. See In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424. Accordingly, before this court will reverse a judgment as being against the manifest weight of the evidence, we must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 25} The termination of parental rights is governed by R.C.2151.414. Before a juvenile court may terminate parental rights with regard to a child who is neither abandoned nor orphaned, it must apply a two-prong test measured by clear and convincing evidence. See, In reCarter (Nov. 2, 2000), Cuyahoga App. No. 76463.
 {¶ 26} As this court stated in In re E.M. (Nov. 8, 2001), Cuyahoga App. No. 79249: "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."
 {¶ 27} In determining what is in the best interests of the child under R.C. 2151.414(D), the court should consider all relevant factors, including but not limited to the following statutory factors:
 {¶ 28} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 29} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 30} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 31} "(4) The child's need for legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 33} After considering the factors, the trial court must determine by clear and convincing evidence, whether one or more of the conditions enumerated in R.C. 2151.414(E) exist with respect to the child's parent. In re Washington, supra; In re William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738.
 {¶ 34} Pertinent factors for the instant case include the following: (1) mother substantially remedied the problems that initially caused the children to be removed from the home; (2) mother has demonstrated a genuine commitment toward the children by regularly visiting, or communicating with the children when able to do so; (3) mother has not been repeatedly incarcerated; and (4) mother has expressed and shown a desire to provide food, clothing, shelter, and other basic necessities for the children.
 {¶ 35} Evidence in the record indicates mother substantially completed her case plan. Because mother has been drug-free since December 1999 and has been successful at her drug treatment programs, this court is convinced of mother's ability to remedy her drug dependency, on a long-term basis. At the time of trial, mother was employed. In all, the evidence shows that mother wants her children back and that she can continue to make strides toward a better life for herself and her children. On the record before us, there is competent and credible evidence indicating mother can provide the care her children require.
 {¶ 36} Obviously, as the court concluded, "[t]he wishes of the children were not expressed, considering their age (4) as well as the separation and possible alienation from their mother."
 {¶ 37} The third statutory factor is the children's custodial history. At the time of trial, they first lived with their paternal grandparents who "were overwhelmed with the care of the * * * children who were all under the age of two." They were then taken to their aunt and uncle's home where "it was not disputed that communication regarding the children was exchanged between mother and aunt, and the aunt further acknowledged receiving appropriate gifts and cards from the mother for the [children]. However maternal aunt did not tell the children their mother had sent the gifts, and does not discuss mother openly with the children." The court found "that the lack of memory of their mother by the children may be attributed, in part, to the lack of discussion about her as well as a clear attachment to the children from the aunt."
 {¶ 38} On the record before us, the fourth factor also favors mother. The evidence is clear that mother has been able to maintain stable housing and employment. She admits that her present home is too small for her and the children and that she will find appropriate housing within the next six months. Mother also stated that, in the event she is unsuccessful, she has made arrangements for her and the children to stay with a long-time family friend. These facts indicate that mother can or will provide a secure home for her children.
 {¶ 39} The trial court clearly addressed the fifth factor: it found that mother's parental rights as to the children's other siblings had not been involuntarily or permanently terminated.
 {¶ 40} Upon review, we find clear and convincing evidence in support of the judgment that it was in the children's best interests to deny the County's motion for permanent custody. The county's second, third, and fourth assignments of error are overruled.
 {¶ 41} The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., and TIMOTHY E. McMONAGLE, J., concur.
[1] At the time of their removal, the twin children were approximately one and a half years old. Mother also had three other minor children at the time of trial. Though her parental rights have never been involuntarily or permanently terminated with regard to these children, they do not live with mother but have been placed in the legal custody of relatives.
[2] Mother had a third child in her custody at the time, M.B. This child, however, is not part of this appeal.
[3] Mother opted for treatment in lieu of incarceration.
[4] By September 28, 2001, mother provided verification that she successfully completed the case plan.
[5] We note that the county never requested findings pursuant to Civ.R. 52, which provides that: "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise." The failure to file a timely request for findings of fact and conclusions of law waives the right to challenge the trial court's lack of an explicit finding with respect to an issue. In re Barnhart, Athens App. No. 02CA20, 2002-Ohio-6023 citing Pawlus v. Bartrug (1996),109 Ohio App.3d 796, 801, 673 N.E.2d 188. "When a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts. Fallang v.Fallang (1996), 109 Ohio App.3d 543, 549, 672 N.E.2d 730." Id. at ¶ 23.
[6] The county also points to the trial court's finding that "not later than July 2001, mother had resumed contact with the children * * *." This fact does nothing to establish the children were abandoned. The court's finding means merely that mother had resumed contact with the children sometime before July 2001; how much before this date is not stated.